IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No.  05-cv-00891-RPM

BRIAN MILLER, Ph.D.,

      Plaintiff,

vs.

MARILYN MANCO-JOHNSON, M.D., and
BRENDA RISKE, R.N.,

      Defendants.

_____

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
_____

The plaintiff Brian Miller, Ph.D. ("Dr. Miller") brought this action against the defendants Marilyn Manco-Johnson, M.D. ("Dr. Manco-Johnson") and Brenda Riske, R.N. ("Ms. Riske"), alleging the defendants fired him in retaliation for speaking out about alleged scientific misconduct by Dr. Manco-Johnson in the handling of a study concerning treatment of hemophiliac children called the Joint Outcome Study.  Dr. Miller asserts claims against both defendants based on alleged violations of his right to free speech and due process under the First and Fourteenth Amendments to the United States Constitution, against Dr. Manco-Johnson only for alleged policy, custom, or practice of engaging in wrongful practices such as retaliation and alleged failure to supervise, control and discipline Ms. Riske, and against both defendants for an alleged conspiracy to deprive Dr. Miller of his rights under the First and Fourteenth Amendments to the United States Constitution.

The defendants moved for summary judgment of dismissal of all three claims. Based on the papers filed, construing the facts in a light most favorable to Dr. Miller, there is evidentiary support for the following statement of facts.

Dr. Manco-Johnson is the Director of the Hemophilia and Thrombosis Center ("Center") of the University of Colorado Health Sciences Center ("University"). She was the principal investigator of the Joint Outcome Study ("JOS"), a clinical study of children with hemophilia and the effects of two treatment methods or "arms" on future joint damage. Ms. Riske was the Senior Professional Research Associate at the Center. The Data Safety Monitoring Board ("DSMB"), chaired by Dr. Louis Aledort, had monitoring or oversight authority over the JOS.

Dr. Miller was employed as the Research and Data Manager for the JOS on August 1, 2002. He replaced Michelle Hacker. He was an at-will employee under the supervision of Dr. Manco-Johnson. The job description for the Research and Data Manager position assigns responsibility for coordinating and managing all aspects of coagulation studies developed at the Center. The duties and responsibilities included: 1) analyzing research data and reporting results of studies at the Center, including analyzing data and presenting results for DSMB meetings; 2) coordinating clinical trials and other research studies developed at the Center; 3) developing research protocols, including collaborating with Dr. Manco-Johnson and other team members to design studies that will answer research questions; and 4) designing and managing research study databases for protocols developed at the Center.

Dr. Miller was responsible for preparing and submitting an annual report called the DSMB Annual Report to the DSMB, and addressing questions from the DSMB. The DSMB Report included outcome data and analysis, severe adverse events, amendments to the protocol, missing

2

data from facilities, and other information.   The DSMB met annually.

In November 2002, Dr. Miller objected to Dr. Manco-Johnson that she was reviewing the 2002 DSMB Annual Report because he believed it would violate DSMB rules and instructions as to blinding, a principle of sound research design.  Dr. Miller testified Ms. Hacker had told him that a review of the DSMB report by Dr. Manco-Johnson would be a violation of the DSMB rules.  Dr. Miller also voiced his objection separately to Ms. Riske and Dr. Aledort.  He believed it was his responsibility in his position at the Center to provide this information to Dr. Aledort. Although the parties dispute whether Dr. Manco-Johnson was supposed to be blinded to the DSMB Report data, it is assumed for the purposes of the defendants' motion that blinding of Dr. Manco-Johnson was required.

Dr. Miller wanted to include certain data analysis concerning a variable called MaxBleeds in the 2002 DSMB report but Dr. Manco-Johnson directed him to exclude such data.  Dr. Miller compiled this data in the course of his duties at the Center.  Dr. Miller objected separately to Dr. Manco-Johnson and Dr. Aledort about Dr. Manco-Johnson's directive.   Although Dr. Manco-Johnson directed Dr. Miller not to do so, Dr. Miller included some of his analysis into the annual report, believing it was his duty to do so.

Between mid-November and early December 2002, Dr. Miller approached Dr. Manco-Johnson about performing an interim (midyear) analysis of the data for the JOS study because he believed the 2002 data was "trending strongly for one arm [treatment method] being significantly better than another arm."  According to Dr. Miller, this raised the question of whether the study could be stopped and there would be no further need to expose patients to the less effective treatment method.  Dr. Manco-Johnson declined that suggestion.  Dr. Miller objected to Dr.

3

Manco-Johnson and explained the possible benefits and low costs of an interim data analysis.  He had a brief conversation with Dr. Aledort about his suggestion.

In September 2003, Dr. Manco-Johnson asked to see the 2003 DSMB report but Dr. Miller objected that the rules were that she should not be looking at the report.  Nonetheless, Dr. Miller made Manco-Johnson a copy of the report and Dr. Manco-Johnson looked through the report, including outcomes and treatment differences, critiqued it, and asked for formatting changes.  While Dr. Manco-Johnson was looking through the report, Dr. Miller again objected to her that she should not be reviewing the report.  Dr. Miller also expressed to Dr. Aledort his concerns about Dr. Manco-Johnson reviewing the 2003 DSMB Annual Report.

On September 15, 2003, at the annual DSMB meeting in Denver, Dr. Miller presented the DSMB Annual Report.  He then left on a scheduled vacation, returning to work on October 6, 2003.  On October 7, 2003, Riske, with the concurrence of Dr. Manco-Johnson, terminated Dr. Miller's employment.  The reason for Dr. Miller's termination is disputed.  The defendants argue Dr. Miller's termination was due to his inability to perform the job requirements, such as properly using and understanding statistical and database software needed to prepare the DSMB Annual Report.  The defendants' position is inconsistent with the University's Faculty Recommendation Form, signed by Dr. Manco-Johnson, which states that Dr. Miller's termination was due to a "reorganization."  Dr. Miller contends his termination was due to his objections concerning Dr. Manco-Johnson's actions, which contention must be assumed true for the purpose of the defendants' motion.

On October 10, 2003, Dr. Miller sent an e-mail to Dr. Aledort, accusing Dr. Manco-Johnson of improprieties regarding the JOS, including her reviewing of the 2002 and 2003 DSMB

4

Annual Reports.  Dr. Miller also notified others having oversight over the JOS about Dr. Manco-Johnson's alleged scientific misconduct.

Dr. Miller's allegations caused an investigation.  Dr. Manco-Johnson disputed the allegations, including asserting that some of Dr. Miller's allegations were fabricated, but the Committee on Research Ethics found that Dr. Manco-Johnson engaged in some research misconduct because, among other things, she violated instructions she had received from the Center for Disease Control and the DSMB regarding blinding and treating JOS patients while they were enrolled in the study.  The Office for Human Research Protections, Department of Health & Human Services, also conducted an on-site evaluation of the human subject protections system at the University related to the JOS, found deficiencies, and requested a corrective action plan.

Dr. Miller unsuccessfully sought other employment, including an assistant professor position in the Division of Emergency Medicine at the University.  The reason why Dr. Miller did not receive that position is disputed.  Dr. Miller contends he was not hired because Dr. Manco-Johnson allegedly told Dr. Norman Paradis, Medical Director for the Division of Emergency Medicine, that Dr. Miller was terminated "not under the best circumstances."   The defendants dispute this contention, arguing that Dr. Miller was not hired because Dr. Benjamin Honigman, Head of the Division of Emergency Medicine, was not satisfied that Dr. Miller could support his salary and benefits as the proposed position was to be funded by pharmaceutical research-sponsored studies.  Dr. Miller contends Dr. Manco-Johnson's actions in claiming that Dr. Miller fabricated some of his allegations against her and in contacting Dr. Paradis constitute post-termination retaliation.

Dr. Miller's first claim based on alleged retaliation for exercising his right to free speech

under the First Amendment fails under *Garcetti v. Ceballos,* 126 S.Ct. 1951 (2006) because his statements and allegations were within the performance of his official duties. *Green v. Board of County of Comm'rs*, 472 F.3d 794 (10th Cir. 2007); *Casey v. West Las Vegas Ind. School Dist.,* 473 F.3d 1323 (10th Cir. 2007).

Dr. Miller's claim based on his allegations concerning Dr. Manco-Johnson's post-termination actions does not implicate any liberty interest cognizable under the due process clause as articulated in *Paul v. Davis,* 424 U.S. 693 (1976). Dr. Miller has failed to produce evidence sufficient to support any of his other claims. They are all premised on a violation of the First Amendment and none has been shown. It is therefore

ORDERED that the defendants' Motion for Summary Judgment [Doc. #27] is granted. The Clerk will enter judgment for the defendants, dismissing the plaintiff's complaint and this civil action and awarding the defendants their statutory costs.

DATED: May 2nd, 2007

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge